UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YOSEFA JALAL,<br><br>                    Plaintiff,<br><br>     v.<br><br>LUCILLE ROBERTS HEALTH CLUBS INC.,<br><br>                    Defendant. | **COMPLAINT**<br><br>15 Civ._____ |

Plaintiff Yosefa Jalal,[1] by her attorneys Emery Celli Brinckerhoff & Abady LLP, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This is a case about repeated religious discrimination by one of the most prominent health club chains in New York: Lucille Roberts.

2. Yosefa Jalal is an elementary school teacher, and a student pursuing her Master's degree in childhood education. She is also an avid gymgoer, who likes to work out, take Zumba classes, ride the elliptical, and stay fit. And she is an observant, modest Jewish woman, who in public wears a knee-length, fitted skirt (*see* Ex. B).

3. In the Lucille Roberts health club, Ms. Jalal thought she had found the perfect fit. Lucille Roberts was a health club for women, conveniently located, and affordable. For years, wearing the skirt, she would take gym classes and ride the elliptical, without complaint or incident. But then it all changed. Employees at Lucille Roberts began to target Ms. Jalal, harassing her, screaming at her, accusing her of trespassing, banning her, and even threatening to call the police, all because she wore the skirt. This, even though Ms. Jalal repeatedly told staff

---

[1] Ms. Jalal recently changed her legal name from Sarah Jalal to Yosefa Jalal.

that she wore the skirt for religious reasons.

4. The skirt posed no danger to equipment or to anyone (Ex. B). The skirt did not violate Lucille Roberts' "Dress Code," which *dis*courages gymwear (*e.g.*, sweatpants), encourages gymgoers to "look your best," and says nothing at all about skirts (*see* Ex. A). But apparently Ms. Jalal's Jewish modesty did offend Lucille Roberts' self-image of a health club filled with "strong, sexy and confident women." Ms. Jalal is not alone: Lucille Roberts has harassed other modest Jewish women, and will continue to do so until a Court enjoins this company.

5. Public accommodations must serve people regardless of race, creed or religion under federal, state and city law, whether they wear a kippah, a skirt, or a cross of ash on their forehead. Ms. Jalal wants to be readmitted to Lucille Roberts. She wants to be treated the same as other women. She wants to take classes and work out in peace. Ms. Jalal is entitled to relief from this Court.

## PARTIES

6. Plaintiff Yosefa Jalal is a resident of Brooklyn, an elementary school math teacher, a student at Brooklyn College, and an observant Jewish woman.

7. Defendant Lucille Roberts Health Clubs Inc. ("Lucille Roberts") is a place or provider of a public accommodation as defined by federal, state and city law, and a gym open to the general public. Its principal address is on 4 e. 80th Street, New York, New York, and it has facilities in Manhattan, Brooklyn and elsewhere.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1343, 42 U.S.C. § 2000a-6, and supplemental jurisdiction over the New York

City and State law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because defendant Lucille Roberts is incorporated in the State of New York, maintains at least six facilities open to the public in this District, has its principal place of business in the District, and otherwise conducts business in this District.

## PROCEDURAL REQUIREMENTS

10.     At the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of NYCHRL § 8-502.  Plaintiff also served the office of the New York State Attorney General.

## JURY DEMAND

11.     Plaintiff demands trial by jury in this action.

## FACTS

*Yosefa Jalal*

12.     Yosefa Jalal grew up in Long Island, and graduated from Hofstra University with a B.A. in math education.  She is an elementary school teacher, teaching math to second, third and fourth graders.

13.     Ms. Jalal is getting her Master's degree in Brooklyn College in childhood education with a concentration in math.

14.     Ms. Jalal is also an observant Jew.  She keeps Kosher, regularly goes to synagogue, and observes the Sabbath.

15.     As an observant Jew, Ms. Jalal observes the Jewish rules of modesty.  She wears modest clothing, wears skirts and tights to cover her legs, and shirts that cover her elbows and

come to her neck.

16.     Ms. Jalal also enjoys physical fitness.  She likes to work out, to stay in shape, and to be healthy.

17.     Like many women, Ms. Jalal prefers to go to a women-only gym.  This is particularly important for her, given her religious beliefs, and the Jewish rules of modesty she follows.

*Lucille Roberts*

18.     Lucille Roberts is a public accommodation and a health club.  According to its website, Lucille Roberts "has nearly 50 locations in New York, New Jersey, and Pennsylvania," and is "one of the top 10 chains in the country."

19.     Its self-described goal is to "provide strong, sexy and confident women with a place they can call their own."

20.     Lucille Roberts offers numerous recreational activities and a range of physical fitness services for its customers.

21.     For example, the Kings Highway location at 925 Kings Highway, Brooklyn, New York, which Ms. Jalal frequented, offered exercise classes and dancing: including "Zumba," "Kick Boxing," "Boot Camp," "Dance it Off," "Dance Aerobics," "High Intensity Interval Training," and many other similar activities.

22.     The Flatbush Avenue location, which Ms. Jalal also frequented, offered similar exercise classes and dancing.  It had two floors, an equipment room, a locker room, and a classroom.

23.     On its website, Lucille Roberts offers over 60 classes, including 9 dance classes ("House Party Fitness," "Just Dance," and "Dance it Off," among others), 9 classes in "Toning

and Relaxation" (Yoga, Pilates, and others), and classes in "Boot Camp & Kickboxing," "Cross Training & Total Body," and "Target Training."

24. Lucille Roberts promises that its classes "will make you strong, sexy and confident."

25. At Kings Highway, Flatbush Avenue, and in its other locations, Lucille Roberts also offers a range of gym equipment, including weights, treadmills, ellipticals, and bike machines.

26. Lucille Roberts intends to create "an affordable and comfortable environment" where women can "exercise, lose weight, and have fun doing it." Lucille Roberts maintains Twitter and Instagram accounts where it posts inspirational quotes and photos about healthy eating and exercising and emphasizes the fun aspects of the "LRlifestyle." On Lucille Roberts' blog, Lucille Roberts posts healthy recipes.

27. Lucille Roberts has various "Member Rules and Regulations," including a "Dress Code." *See* Ex. A.

28. The Dress Code discourages "[f]lannel" and "denim and street clothes."

29. The Dress Code also provides: "This may be a ladies gym but you should still look your best. Studies show you workout longer, faster and harder when you have on a nice outfit. Studies also show you're 75% more likely to run into your ex on a day where you wear embarrassing sweatpants and a stained t-shirt."

30. Thus the Dress Code, to the extent one can call it a "Dress Code," discourages gym wear, such as "sweatpants," and instead encourages gym goers to wear "a nice outfit" and to "look your best."

31. Nowhere does the Dress Code prohibit any member from wearing a skirt.

32. Nowhere does the Dress Code mention the word "skirt."

***Ms. Jalal Joins Lucille Roberts***

33. Ms. Jalal became a member of Lucille Roberts in or about November 2011.

34. Lucille Roberts seemed perfect for her: it was a women's only gym, affordable, open at convenient hours, and had many locations in Brooklyn, where Ms. Jalal lives.

35. At the gym, Ms. Jalal would always wear a knee-length, fitted but comfortable skirt. *See* Ex. B (photos of the skirt).

36. Given its length and its fit, the skirt could not possibly interfere with any gym equipment, and did not interfere with any gym equipment.

37. If anything, the skirt was safer to use on Lucille Roberts' gym equipment than a pair of knee-length, baggy shorts, or a sweatshirt tied around the waist.

38. The knee-length skirt also posed no obstacle or danger in any class offered by Lucille Roberts.

39. Ms. Jalal regularly went to Lucille Roberts, initially at the Bay Shore, New York location at 1850 Sunrise Highway, Bayshore, New York.

40. In early 2013, Ms. Jalal attended a seminary in Jerusalem. When she returned, she resumed her visits to Lucille Roberts, and transferred her primary location to Kings Highway.

41. For a few months, Ms. Jalal regularly went to Kings Highway, taking a number of classes, and using the elliptical, her exercise equipment of choice.

42. During all those visits, Ms. Jalal wore the skirt.

43. During all those visits, no one at Lucille Roberts complained about the skirt.

44. On October 3, 2013, Ms. Jalal went to the Kings Highway location. Wearing her

skirt, as she always had, Ms. Jalal used the elliptical. A manager approached, and began shouting at Ms. Jalal that she could not wear the skirt. Ms. Jalal went to the front desk, was told not to wear a skirt, and left the premises.

45. Nevertheless, for over a year after that incident, Ms. Jalal returned to Lucille Roberts on numerous occasions, always wearing her skirt.

46. During that year, between October 6, 2013, and October 1, 2014, she went to Lucille Roberts' locations at Fulton Brooklyn, at Pitkin, at Flatbush, but mostly at Kings Highway.

47. Every time, she wore the skirt.

48. During that year, Ms. Jalal took a number of classes (Zumba, weight classes, kickboxing), worked out, and used equipment, including the elliptical.

49. Over the course of that year, she was seen repeatedly by staff, by managers, and by class instructors, yet no one ever complained about her skirt. Nor did her outfit interfere in any way with any class or equipment at Lucille Roberts.

*Ms. Jalal is Harassed at Kings Highway*

50. On October 6, 2014, Ms. Jalal went to the Kings Highway location. She was on the elliptical, wearing the knee-length skirt. Ex. B. A staff member approached her, and told her she could not wear the skirt. Ms. Jalal told the staff member she needed to wear the skirt for religious reasons.

51. Ms. Jalal was instructed to speak with a Lucille Roberts manager named Adrienne (on information and belief, Adrienne Johnson).

52. Ms. Jalal told Adrienne that she needed to wear the skirt for religious reasons. Adrienne told Ms. Jalal she could not wear the skirt, but instead could wear a long t-shirt.

53. A "long t-shirt" would not satisfy the Jewish laws of modesty.

54. A long, loose-fitting t-shirt would be more likely to interfere with gym equipment than Ms. Jalal's fitted, knee-length skirt.

55. Told she could not stay at Lucille Roberts while wearing the skirt, Ms. Jalal left.

*Ms. Jalal is Harassed at Flatbush Avenue*

56. Having been rejected by the Kings Highway location, Ms. Jalal began to attend the Flatbush Avenue location, where she had previously taken classes and worked out in the skirt without incident or complaint.

57. For over half a year, between October 20, 2014 and June 2015, Ms. Jalal regularly went to the Flatbush Avenue location.

58. Every time, she wore the skirt.

59. During that period, Ms. Jalal took a number of classes (Zumba, weight classes, kickboxing), worked out, and used equipment, including the elliptical.

60. Over the course of that eight-month period, she was seen repeatedly by staff, by managers, and by class instructors, yet no one ever complained about her skirt. Nor did her outfit interfere in any way with any class or equipment at Lucille Roberts.

61. On June 26, 2015, Ms. Jalal went to Flatbush, wearing her skirt, and worked out on the elliptical. A manager named Tina told Ms. Jalal told that she could not wear the skirt. Ms. Jalal told Tina she had to wear a skirt for religious reasons, and that Lucille Roberts' policy did not prohibit skirts.

62. A manager then told Ms. Jalal that she was "trespassing" because she was not wearing appropriate attire.

63. Not wanting to get into trouble, Ms. Jalal left the gym.

64. A few days later, Ms. Jalal went to the local police precinct, and asked whether it was trespassing to go to Lucille Roberts with a skirt. An officer told her it was not trespassing.

65. Ms. Jalal then went again to the Flatbush location, wearing the skirt, without incident.

66. On July 1, 2015, Ms. Jalal again went to Flatbush. The lady at the desk told Ms. Jalal she could not wear the skirt. Upset at this constant harassment, Ms. Jalal went to class anyway. In the middle of kickboxing class, the desk lady came to the class and spoke to the instructor. The instructor stopped the music, and told everyone they had to stop class until Ms. Jalal took off her skirt. Ms. Jalal told the instructor she had to wear the skirt for religious reasons. At this point, angered by the class interruption, other Lucille Roberts patrons began to get frustrated with Ms. Jalal. They told her: "just take it off." Some participants screamed at Ms. Jalal.

67. Ms. Jalal was embarrassed, upset, and shocked.

68. Ms. Jalal left the class, and retreated to work out alone on an elliptical.

69. The desk lady then tracked Ms. Jalal down, demanded to know her name, left, returned, and told Ms. Jalal in substance: "your membership has been revoked, you're trespassing."

70. The Lucille Roberts employee also told Ms. Jalal: "The police are on their way."

71. Ms. Jalal felt Lucille Roberts was treating her like a criminal. She told the desk lady: "you're treating me like a criminal."

72. Ms. Jalal was upset and scared. She had never been arrested by the police.

73. As a result of this constant harassment, and Lucille Roberts' threats to call the police simply because Ms. Jalal was wearing a skirt, Ms. Jalal fled the premises. As a result of

Lucille Roberts' repeated threats, intimidation, harassment, and blatant discrimination, Ms. Jalal has never returned to any Lucille Roberts location.

74. By letter dated July 1, 2015, Lucille Roberts formally terminated Ms. Jalal's membership.

75. Ms. Jalal wants to work out, be fit, take classes, and be allowed to attend Lucille Roberts in peace, without sacrificing her religious beliefs.

***Lucille Roberts Harasses Other Observant, Jewish Women***

76. Ms. Jalal is not the only Jewish woman to be harassed by Lucille Roberts. In the last months, other observant Jewish women wearing similar knee-length skirts have been harassed, told to remove their skirts, and told to leave Lucille Roberts locations.

77. Lucille Roberts is systematically discriminating against modest, observant Jewish women, for no defensible reason, and notwithstanding their own Dress Code. This systemic harassment and discrimination caused Ms. Jalal's loss of membership, as well as embarrassment, shame, fear, and other emotional harm.

78. Lucille Roberts' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Ms. Jalal's civil rights, for which she is entitled to an award of punitive damages.

## PROCEDURAL HISTORY

79. On January 7, 2015, Ms. Jalal filed an administrative complaint with the New York City Commission on Human Rights, relating to the October 6, 2014 incident.

80. On August 18, 2015, the New York City Commission dismissed the complaint for administrative convenience, which permits her to file New York City and State claims in court relating to the October 6, 2014 incident. Ms. Jalal did not file any administrative complaint

concerning the July 2015 incidents.

## FIRST CLAIM FOR RELIEF
### Title II, Civil Rights Act of 1964, 42 U.S.C. § 2000a

81.     Plaintiff hereby repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

82.     Lucille Roberts, and its various locations including at Kings Highway and Flatbush Avenue, are "places of public accommodation" as defined in 42 U.S.C. § 2000a(b-c).

83.     "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of . . . religion."  42 U.S.C. § 2000a(a).

84.     "No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by [42 U.S.C. § 2000a(a)] or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by [42 U.S.C. § 2000a(a)] or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by [42 U.S.C. § 2000a(a)]."  42 U.S.C. § 2000a-2.

85.     By stripping Ms. Jalal of her membership, harassing her, banning her from the premises, calling the police, refusing to let her wear the skirt on the premises, and engaging in the other conduct described *supra*, Lucille Roberts and its agents and employees discriminated against Ms. Jalal on the basis of her Jewish religion, in violation of 42 U.S.C. § 2000a(a) and 42 U.S.C. § 2000a-2, and is liable under 42 U.S.C. § 2000a-3.

86. Accordingly, under 42 U.S.C. § 2000a-3(a-b), plaintiff is entitled, *inter alia*, to injunctive relief and reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*

87. Plaintiff hereby repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

88. At all times relevant hereto, defendant Lucille Roberts owned and operated a place of public accommodation, and *inter alia*, a "gymnasium," N.Y. Exec. Law § 292, and therefore, defendant and its officers, agents, servants and employees were required to comply with the Human Rights Laws of the State of New York, including N.Y. Exec. Law § 296.

89. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . creed . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

90. N.Y. Exec. Law § 296(2)(a) also provides it is unlawful for any public accommodation "directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of . . . creed . . . or that the patronage or custom thereat of any person of or purporting to be of any particular . . . creed . . . is unwelcome, objectionable or not acceptable, desired or solicited."

91. By its actions described *supra*, Lucille Roberts violated N.Y. Exec. Law § 296(2)(a).

92. Accordingly, under N.Y. Exec. Law § 297, plaintiff is entitled, *inter alia*, to damages and reasonable attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**New York City Human Rights Law**
**N.Y. C. Administrative Code § 8-107** ***et seq.***

93. Plaintiff hereby repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

94. At all times relevant hereto, defendant Lucille Roberts owned and operated a place of public accommodation as defined in N.Y.C. Admin. Code § 8-102(9), and therefore, Lucille Roberts and its officers, agents, servants and employees were required to comply with the New York City Human Rights Law, including N.Y.C. Admin. Code § 8-107.

95. Defendant's conduct as described above constitutes an unlawful discriminatory practice to refuse, withhold from and deny plaintiff the advantages, facilities and privileges of a place of public accommodation because of her creed, in violation of New York City Admin. Code, § 8-107(4)(a).

96. Defendant's conduct as described above also unlawfully discriminates against the "custom of any person belonging to, purporting to be, or perceived to be, of any . . . creed," in violation of New York City Admin. Code, § 8-107(4)(a).

97. Defendant's conduct was intentional, willful, and made in disregard for the rights of others.

98. Accordingly, under the New York City Administrative Code § 8-502(a) and (f), plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

WHEREFORE, plaintiff respectfully request judgment against defendant as follows:

(A) an order enjoining defendant to re-admit Ms. Jalal as a full member, and requiring defendant to permit Ms. Jalal and other observant Jewish women to wear knee-length skirts at defendant's facilities;

(B) an order requiring defendant to comply with federal, state and city anti-discrimination law, and prohibiting defendant from discriminating on the basis of religion, and in particular, discriminating against observant Jewish women;

(C) an order awarding compensatory damages in an amount to be determined at trial;

(D) an order awarding punitive damages in an amount to be determined at trial;

(E) reasonable attorneys' fees and costs; and

(F) directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

(G) such other and further relief as the Court may deem just and proper.

Dated: October 2, 2015
New York, New York

Respectfully submitted,

EMERY CELLI BRINCKERHOFF
  & ABADY LLP


By: _____/s/_____
           Ilann M. Maazel

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiff Yosefa Jalal*