USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 22, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
YOSEFA JALAL, :
:
                Plaintiff, :      15-cv-07802
:
         v. :      **OPINION**
:      **& ORDER**
LUCILLE ROBERTS HEALTH CLUBS INC., :
:
                Defendant. :
:
------------------------------------------------x

THOMAS P. GRIESA, United States District Judge:

      Plaintiff Yosefa Jalal brings this action against defendant Lucille Roberts Health Clubs Inc., alleging discrimination in a place of public accommodation in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; New York State Human Rights Law, N.Y. Exec. Law § 296(2)(a); and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107. Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, defendant's motion to dismiss is granted.[1]

---

[1] At a status conference on August 12, 2016, the court expressed an intention to convert defendant's motion to dismiss to a motion for summary judgment. *See* ECF No. 23. Both parties were then given an opportunity to submit affidavits in connection with the motion. Upon further review, the court declines to convert defendant's motion to dismiss to a motion for summary judgment. Accordingly, in ruling on defendant's motion to dismiss, the court does not consider any materials not integral to the complaint. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In considering a motion under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint.").

1

# BACKGROUND

**I.  The Complaint**

The following allegations, which are accepted as true for purposes of this motion to dismiss, are taken from plaintiff's complaint.

Plaintiff is a Jewish woman who, in public, wears a knee-length, fitted skirt. Compl. ¶¶ 2, 14–15. Defendant is a corporation that operates a chain of gyms under the name "Lucille Roberts." *Id.* ¶ 18. Membership at defendant's gyms is only available to women. *Id.* ¶ 34. Defendant requires its members to abide by various rules and regulations, including the following dress code:

> **Dress appropriately.** Flannel may be making a comeback this fall but it is still inappropriate gym attire. That also goes for denim and street clothes. This may be a ladies gym but you should still look your best. Studies show you workout longer, faster and harder when you have on a nice outfit. Studies also show you're 75% more likely to run into your ex on a day when you wear embarrassing sweatpants and a stained t-shirt.
>
> **Wear the right shoes.** You must wear sneakers (the regular ones, not these new high-heeled kind) unless your class calls for dance shoes, socks or bare feet. That means no flip flops, sandals, boots, stilettos, flats or slippers. You laugh, but we've seen them all. Your chance of being fashionable is 100%. So is your chance of injury.

*Id.* Ex. A. The dress code does not specifically prohibit skirts. *Id.* ¶ 31.

Plaintiff became a Lucille Roberts member in November 2011. *Id.* ¶ 33. Each time plaintiff went to a Lucille Roberts gym, she wore "a knee-length, fitted but comfortable skirt" while exercising. *Id.* ¶ 35. The skirt neither interfered with gym equipment nor posed a danger in classes offered by defendant. *Id.* ¶¶ 36, 38. Plaintiff went to Lucille Roberts gyms in Bay Shore,

New York and Brooklyn, New York without incident for approximately two years. *Id.* ¶¶ 39–43.

On October 3, 2013, plaintiff went to the Lucille Roberts location on Kings Highway in Brooklyn, New York. *Id.* ¶ 44. As was her usual practice, plaintiff wore a skirt to the gym. *Id.* Plaintiff was exercising on an elliptical when a manager approached and began shouting at her. *Id.* The manager told plaintiff that she could not exercise in a skirt. *Id.* Plaintiff went to the front desk, where she was again told she could not wear a skirt. *Id.* Plaintiff then left the premises. *Id.*

Despite this encounter, plaintiff continued to exercise in a skirt at various Lucille Roberts locations, including the one on Kings Highway, over the next year. *Id.* ¶ 45–47. During that year, plaintiff used gym equipment—such as the elliptical—and participated in classes. *Id.* ¶ 48. Her outfit did not interfere with the equipment or classes, and Lucille Roberts staff members did not comment on it. *Id.* ¶ 49.

On October 6, 2014, plaintiff wore a skirt to the Lucille Roberts location on Kings Highway. *Id.* ¶ 50. Plaintiff was using an elliptical when a staff member approached and told her she could not wear a skirt. *Id.* Plaintiff told the staff member that she needed to wear the skirt for religious reasons. *Id.* The staff member told plaintiff to speak with a manager. *Id.* ¶ 51.

Plaintiff met with the manager and repeated her explanation that she must wear a skirt for religious reasons. *Id.* ¶ 52. The manager told plaintiff that she could not exercise in a skirt, but could instead wear a long t-shirt. *Id.*

Wearing a long t-shirt, though, would not comply with plaintiff's religious beliefs. *Id.* ¶ 53. Because the manager told plaintiff she could not exercise at Lucille Roberts while wearing a skirt, plaintiff left. *Id.* ¶ 55.

After this incident, plaintiff began frequenting the Lucille Roberts gym on Flatbush Avenue in Brooklyn instead of the one on Kings Highway. *Id.* ¶ 56. From October 2014 to June 2015, plaintiff regularly wore a skirt to the Flatbush Avenue location. *Id.* ¶¶ 57–58. During this period, she used gym equipment and took classes. *Id.* ¶ 59. The staff did not comment on plaintiff's attire. *Id.* ¶ 60.

On June 26, 2015, however, a manager at the Flatbush Avenue location told plaintiff she could not wear a skirt in the gym. *Id.* ¶ 61. Plaintiff explained to the manager that she had to wear a skirt for religious reasons, and plaintiff noted that the dress code did not prohibit skirts. *Id.* The manager then told plaintiff she was trespassing, so plaintiff left the gym. *Id.* ¶¶ 62–63. A few days later, plaintiff returned to the Flatbush Avenue location and exercised in a skirt without incident. *Id.* ¶ 65.

Plaintiff went to the Flatbush Avenue location again on July 1, 2015. *Id.* ¶ 66. An employee at the front desk told plaintiff she could not wear a skirt, but plaintiff proceeded—in her skirt—to a kickboxing class at the gym, anyway. *Id.* While the class was in session, the employee who was at the desk entered the room and spoke to the instructor. *Id.* The instructor stopped the music and told everyone the class was suspended until plaintiff took off her skirt. *Id.* Plaintiff told the instructor she had to wear the skirt for religious reasons. *Id.*

4

Other customers, frustrated by the interruption, told plaintiff to "just take it off." *Id.* Some patrons screamed at plaintiff. *Id.* Plaintiff left the class and began to exercise alone on an elliptical. *Id.* ¶ 68.

The employee from the front desk saw plaintiff using the elliptical and demanded to know her name. *Id.* ¶ 69. The employee then told plaintiff her membership had been revoked, she was trespassing, and the police were on their way. *Id.* ¶¶ 69–70. Plaintiff subsequently left the gym. *Id.* ¶ 73. In a letter dated July 1, 2015, defendant informed plaintiff that her membership had been terminated. *Id.* ¶ 74.

Other Jewish women wearing knee-length skirts have had similar experiences at Lucille Roberts gyms. *Id.* ¶¶ 4, 76. According to plaintiff, the attire worn by modest Jewish women "offend[s] Lucille Roberts' self-image of a health club filled with 'strong, sexy and confident women.'" *Id.* ¶ 4.

## II. Procedural History

Plaintiff filed an administrative complaint with the New York City Commission on Human Rights on January 7, 2015. *Id.* ¶ 79. This complaint pertained to the October 6, 2014 incident, in which a manager told plaintiff she could not wear a skirt but could wear a long t-shirt. *Id.* The Commission dismissed the complaint on August 18, 2015. *Id.* ¶ 80. Plaintiff did not file an administrative complaint about the July 2015 incidents. *Id.*

Plaintiff filed suit in this court on October 2, 2015. Defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 2, 2015. The court held a status conference on August 12, 2016.

5

After the conference, the parties reported that they were engaged in productive settlement discussions, and the court held the motion to dismiss in abeyance while the parties negotiated. Ultimately, the parties were unable to reach a settlement.

## DISCUSSION

### I. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### II. Title II of the Civil Rights Act of 1964

Title II of the Civil Rights of Act of 1964 entitles all persons "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). "[T]he overriding purpose of Title II [was] to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." *Daniel v. Paul*, 395 U.S. 298, 307–08 (1969) (internal quotation marks and citation omitted).

6

There is little case law in this Circuit analyzing claims of religious discrimination in places of public accommodation under Title II. Courts have held, though, that a plaintiff bringing a Title II claim "must allege facts which show that [she] was deprived of equal use and enjoyment of a covered facility's services and facts which demonstrate discriminatory intent." *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009) (citing *Thomas v. Tops Friendly Mkts., Inc.*, No. 96-cv-1579, 1997 WL 627553, at *5 (N.D.N.Y. Oct. 8, 1997)); *see also Joseph v. Metro. Museum of Art*, No. 15-cv-9358, 2016 WL 3351103, at *2 (S.D.N.Y. June 15, 2016), *aff'd*, 2017 WL 1103468 (2d Cir. Mar. 22, 2017) (summary order); *Baron v. Miller*, No. 3:13-cv-153, 2014 WL 3956562, at *8 (N.D.N.Y. Aug. 13, 2014); *Macer v. Bertucci's Corp.*, No. 13-cv-2994, 2013 WL 6235607, at *8 (E.D.N.Y. Dec. 3, 2013). A plaintiff can use either direct or circumstantial evidence to show discriminatory intent. *Thomas*, 1997 WL 627553, at *5; *see also Dunaway v. Cowboys Nightlife, Inc.*, 436 F. App'x 386, 398 (5th Cir. 2011).

Defendant concedes that its gyms are places of public accommodation within the meaning of the statute. Plaintiff, however, has not adequately alleged facts demonstrating discriminatory intent. Although the standard for pleading discriminatory intent under Title II is not well defined, courts in this Circuit have analyzed Title II claims using the framework established for claims brought under 42 U.S.C. § 1981.[2] *See Stone v. N.Y. Pub. Library*, No. 05-cv-

---

[2] Section 1981 bars "discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).

7

10896, 2008 WL 1826485, at *3 (S.D.N.Y. Apr. 22, 2008), *aff'd*, 348 F. App'x 665 (2d Cir. 2009); *see also Bentley v. Mobil Gas Station*, 599 F. App'x 395, 396 n.1 (2d Cir. 2015). Section 1981 claims are, in turn, analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). Under *McDonnell Douglas*, a claim survives a motion to dismiss if the complaint gives "plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

Here, plaintiff fails to allege facts plausibly supporting a minimal inference of discriminatory motivation. Although plaintiff contends that she was treated differently than other Lucille Roberts members on the basis of her religion, the factual allegations only suggest that she was treated differently because she insisted on wearing an article of clothing that, according to defendant, was inappropriate gym attire. That decision is defendant's, and defendant's alone. To the extent the parties dispute whether defendant's "Member Rules and Regulations"—namely, the lighthearted dress code—actually bans skirts, that is a contractual issue, and it does not give rise to a federal civil rights lawsuit.

Nowhere does the complaint allege that defendant selectively enforced its dress code against Jewish women. The complaint does not allege, for example, that defendant permitted non-Jewish women to exercise in skirts, nor does it allege that defendant allowed non-Jewish women to violate any other rule or

8

regulation. Moreover, plaintiff has not pled any specific facts to support her claim that her religious practices offended defendant's "self-image of a health club filled with 'strong, sexy and confident women.'" And although plaintiff contends that defendant has "harassed" other modest Jewish women, plaintiff has not provided any information to support this conclusory allegation. Plaintiff thus fails to adequately allege discriminatory intent.

Plaintiff also argues that, even if defendant lacked discriminatory intent, she has stated a claim under Title II because defendant's policy prohibiting skirts in its gyms has a disparate impact on modest Jewish women. Generally speaking, disparate impact claims do not require proof of discriminatory intent because disparate impact theory targets "practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). There is no indication, though, that claims grounded solely in disparate impact—and lacking any allegation of discriminatory intent—are cognizable under Title II.

Indeed, courts in this Circuit have required plaintiffs bringing Title II claims to "allege *intentional discrimination*," *James v. Am. Airlines, Inc.*, No. 16-cv-674, 2017 WL 1208429, at *6 (E.D.N.Y. Mar. 31, 2017) (emphasis added), and plead "facts which demonstrate *discriminatory intent*," *Coward*, 665 F. Supp. 2d at 307 (emphasis added). The statute's language fully supports these formulations of a Title II claim. *See* 42 U.S.C. § 2000a(a) (barring "discrimination or segregation on the ground of race, color, religion, or national origin" but not precluding unintended adverse impacts); *see also Boyle v.*

9

*Jerome Country Club*, 883 F. Supp. 1422, 1432 (D. Idaho 1995) ("To go beyond the intended language of Title II, and require public facilities to affirmatively accommodate patrons' religious beliefs . . . is not appropriate nor allowed under the applicable legislation."). Moreover, district courts in other circuits have held that disparate impact claims are not cognizable under Title II. *See, e.g., Hardie v. Nat'l Collegiate Athletic Ass'n*, 97 F. Supp. 3d 1163, 1165–69 (S.D. Cal. 2015), *appeal filed*, No. 15-55576 (9th Cir.); *Akiyama v. U.S. Judo Inc.*, 181 F. Supp. 2d 1179, 1184–87 (W.D. Wash 2002); *LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1370 n.2 (S.D. Fla. 1999). This court sees no reason to diverge from the logic set forth in those cases.

In making her argument that she has sufficiently pled a disparate impact claim under Title II, plaintiff references the Second Circuit's decision in *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333 (2d Cir. 1974). *Olzman* dealt with a private, members-only swim club that, in manipulating its facially-neutral rules for allowing guests, effectively prevented black children from visiting the club. *Id.* at 1337–38. The district court entered summary judgment in favor of the defendant-swim club, but the Second Circuit reversed, holding that "however racially neutral the rule . . . may appear on its face, one inquiry the court below must make is whether it was adopted to keep certain black children out." *Id.* at 1341–42. The Second Circuit instructed the district court to consider "whether the supposedly neutral rule was nothing more in reality than a smokescreen to cover the actual intent and effect or whether it was factually grounded in non-racial motivations." *Id.* at 1342.

Far from paving the way for pure disparate impact claims under Title II—i.e., those in which the only allegation is that a facially-neutral policy adversely affects one group of people—the Second Circuit's holding in *Olzman* actually makes clear that an intent to discriminate is the animating element of a Title II claim. *See Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1145 (N.D. Cal. 2014) (stating that *Olzman* "adopted a disparate impact theory as to Title II," but recognizing that the case "also involved evidence of discriminatory intent motivating otherwise race-neutral rules"); *Akiyama*, 181 F. Supp. 2d at 1185 (reasoning that the Second Circuit's decision in *Olzman* was "fully consistent" with Congress' goal in enacting Title II to correct intentional wrongs, despite the fact that the Court "ostensibly relied on a disparate impact analysis"). To hold otherwise would be unworkable because, given the fact that religious beliefs are subjective and personal, practically any rule created by a public accommodation could adversely affect an individual or one group of people. As one district court put it:

> Absent more, the fact that a proprietor has decided to offer his or her services to the public in a way which could impact a religious practice or belief, whether it be by conducting business only on Sundays, by failing to keep a Kosher kitchen, by failing to include fish on the menu during Lent, or by prohibiting smoking, raises no inference of discrimination or other conduct which Congress sought to censure through the enactment of Title II.

*Akiyama*, 181 F. Supp. 2d at 1185. Accordingly, the court holds that there is no claim under Title II for a facially-neutral policy when there is no indication of discriminatory motive.

To be sure, Title II would be implicated if a rule, though neutral on its face, was adopted as pretext for intentional discrimination. *See id.* at 1187 n.6 ("By way of example, if a restauranteur's facially neutral prohibition against hats were shown to be a surrogate for a rule excluding Sikhs, Hasidic Jews, and/or Muslims, a disparate treatment claim under Title II would be appropriate."). Here, though, the complaint does not allege facts suggesting that defendant prohibited skirts as pretext for barring Jewish women. While plaintiff contends that defendant excluded her because her modest attire did not conform with the image defendant sought to project in its gyms, a Title II claim cannot be grounded solely in discrimination based on appearance or attire, as these are not classes protected by the statute. Absent factual allegations supporting an inference of discriminatory intent based on religion, plaintiff does not state a claim. Defendant's motion to dismiss is thus granted.

### III. State and Local Law Claims

A district court has discretion to decline to exercise supplemental jurisdiction over claims brought under state and local law where the court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Further, "where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006). The court therefore declines to exercise supplemental jurisdiction over plaintiff's state and local law claims. These claims are dismissed without prejudice.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted. This opinion and order resolves the motion numbered 12 on the docket. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: New York, New York
       May 22, 2017

_____
Thomas P. Griesa
United States District Judge